IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 4, 2009 Session

**STATE OF TENNESSEE v. JEFFERY THOMAS**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-08266     John T. Fowlkes, Jr., Judge**

**No. W2008-01944-CCA-R3-CD  - Filed December 8, 2009**

On August 14, 2007, the defendant, Jeffery Thomas, pleaded guilty to one count of DUI second offense, a Class A misdemeanor, in exchange for serving forty-five days in the workhouse followed by ten months and fourteen days of probation. Subsequently, the defendant moved the court to withdraw his guilty plea. The defendant argued that his guilty plea resulted in a manifest injustice because he entered the plea due to fear and ineffective assistance of counsel. The trial court denied the motion. Defendant now appeals. Following our review, we affirm the judgment below.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Paul E. Lewis, Millington, Tennessee, for the appellant, Jeffery Thomas.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Brooks Yelverton and Lora Fowler, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**Background**

In 2005, a Shelby County Grand Jury indicted the defendant, Jeffery Thomas, on three counts: driving under the influence of an intoxicant; driving under the influence, second offense, with a blood alcohol concentration of 0.08% or more ("DUI second"); and reckless driving. On August 14, 2007, the defendant pleaded guilty to DUI second, and the remaining counts were dismissed. The defendant agreed to serve forty-five days in the workhouse, followed by ten months and fourteen days on probation, and a $750 fine. The prosecutor stated the factual basis for the plea as follows:

On December 22nd, 2004, in Memphis, Shelby County, Tennessee, arresting officers made the scene of a three car accident northbound I-55 and Crump and determined the [defendant] had struck other vehicles. The [defendant] was very disoriented, staggering[,] and he had slurred speech. There was about one to [two] inches of ice and snow on the street. The [defendant] also had an odor of intoxicant on his breath. [The] DUI unit made the scene. The [defendant] did submit to a blood alcohol test which registered a [0].83[%].

Subsequently, the defendant moved the court to stay execution of the judgment until he could finish a large job his business had undertaken. On September 12, 2007, the defendant, then represented by appellate counsel, moved the court to withdraw his guilty plea. Defendant argued that his plea created a manifest injustice because he entered the plea in fear and with ineffective assistance of counsel.[1] The trial court held a bifurcated hearing on April 4, 2008 and May 30, 2008. Trial counsel, the defendant's business partner, and the defendant testified.

On direct examination, counsel testified that he has been licensed in Tennessee since 1999 and is a criminal defense attorney. He stated that he has not personally tried a DUI trial but handled evidentiary motions, appellate matters, preliminary hearings, and civil forfeiture work for his firm, all connected to DUIs. He testified that in this matter, he filed standard motions but never requested a ruling on any motion. Counsel represented the defendant for two and one-half years. The defendant told him about the chemicals he used in his line of work and that one, Orange Super Strip, caused intoxication. The defendant had offered counsel a material safety data sheet on Orange Super Strip, but counsel did not retain a copy of that data sheet. Counsel researched the main ingredient, methylene chloride, but determined that an involuntary intoxication defense would not be helpful to the defendant. Counsel testified that he was familiar with the breath test machine and its error rate. Counsel planned to introduce evidence about the error rate through an expert subpoenaed by the state for trial. Counsel testified that he had not planned to introduce any exhibits during trial. Counsel stated that he prepared for trial by reviewing all the discovery the state provided, watching the video tape of the incident with another associate, and reviewing the time line of events to ensure that the police complied with regulations. Counsel also researched methylene chloride and involuntary intoxication, spoke with the prosecution, and studied the breath machine. Counsel testified that his investigation showed that methylene chloride was in the defendant's truck, but he did not interview the arresting officers, tow truck driver, or impound lot attendant. Counsel stated that he had no written communication with the defendant concerning what the defendant should do for trial. Counsel testified that the defendant wanted to set the date for trial, hoping that the state's witnesses would not come because they were from another state. Counsel normally has clients come to his office before court appearances but could not remember if the defendant had done so the day of trial. He stated that the defendant had his cell phone number and had previously called counsel on that number. Counsel testified that he had discussed the trial with defendant and had informed defendant that he was prepared for trial.

---

[1] Defendant argued an additional ground in his motion to withdraw the guilty plea, but the ground was dropped during the hearing and is not an issue on appeal.

On cross-examination, counsel recalled that the case had been reset fourteen or fifteen times and would not disagree with the state's assertion of seventeen times. Counsel met with the defendant before each setting, with a few exceptions when someone else from his firm was present to reset the case. Counsel testified that he had represented "several hundred, and probably close to thousands" of DUI defendants. Counsel said that he discussed possible defenses with the defendant, in light of the video of the incident, the arrest ticket, what the defendant had told him, the breath test, the fact of the accident, and the road conditions. Counsel testified that the defendant made the decision to plead guilty after going over all the paperwork, what sentence the defendant could expect, and the possibility of work release. Counsel prepared the defendant for the questions the judge would ask during the plea colloquy, and the defendant appeared comfortable with his decision. Counsel noted that the defendant had previously entered guilty pleas in other matters. Counsel recalled that the defendant did not express dissatisfaction with his representation during the colloquy nor three weeks later when they moved the court to stay the execution of the judgment. Counsel testified that he did nothing to instill fear into the defendant but had warned the defendant that his sentence might be longer if they went to trial.

On redirect examination, counsel testified that the police did not give the defendant a field sobriety test, and he opined that the lack of the field sobriety test worked in the defendant's favor. Counsel could not recall whether the defendant had asked him for a recommendation on whether he should plead guilty or not. He did recall discussing the facts of the case and the possible consequences of going to trial.

The defendant's business partner, Kevin Leeke, testified that he accompanied the defendant to meetings with trial counsel. Mr. Leeke witnessed the defendant hand a material safety data sheet for Super Orange Strip to counsel, who handed it back to the defendant. The court admitted the material safety data sheet as evidence. Mr. Leeke presented the defendant's work schedule for the day of the accident, December 22nd, and testified that the defendant would have used Super Orange Strip at his first appointment that day. Mr. Leeke was present at most of the defendant's meetings with counsel and stated that the material data safety sheet for Orange Super Strip did not come up again at any meeting at which he was present. Mr. Leeke did not attend the guilty plea hearing "[b]ecause it was [the defendant and his] understanding that the [case] would be reset." He was present when the case was reset for August 14 and overheard counsel tell the defendant, "[C]ontact me the first part of August[,] and we'll get together on it." Mr. Leeke contacted counsel about delaying the execution of the judgment so that the defendant could complete a major contract. Mr. Leeke testified that his communications with counsel "drug along until [he] contacted . . . [counsel's] boss at home." Mr. Leeke said that he did not hear counsel discuss trial strategy, possible defenses, witnesses, or the defendant's right to testify.

On cross-examination, Mr. Leeke testified that the defendant previously pleaded guilty to a DUI offense and had known "what was going on then[.]" Mr. Leeke stated that after the defendant pleaded guilty, he called Mr. Leeke and said "he had no choice." He accompanied the defendant and trial counsel when they requested that the trial court delay the execution of the judgment, but no one mentioned withdrawing the guilty plea to the court. Mr. Leeke testified that he did not know that the defendant could withdraw his guilty plea at that time because, after researching the matter, he had concluded that it was not possible. He had already contacted appellate counsel by the time they

requested that the trial court delay the judgment. Mr. Leeke further testified that the defendant had used Orange Super Strip at least weekly for fifteen years, and the time between the defendant's use of Orange Super Strip on December 22nd and his DUI arrest was approximately ten hours.

On re-direct examination, Mr. Leeke testified that he went to the impound lot one week after the accident and observed that the container of Orange Super Strip had collapsed and leaked in the cab of the truck. On re-cross examination, he stated that putting the Orange Super Strip "on the floorboard with the heater running and ice coming down [was] not a smart move."

The defendant testified on direct examination that he chose counsel's firm because of his boss's reputation. The defendant testified that he met with counsel seventeen times, for two to three minutes each time, at counsel's office. The defendant said that counsel told him he would get a maximum of forty-five days, whether he went to trial or not. He testified that he gave counsel a material safety data sheet for Orange Super Strip, but counsel returned it to him. The defendant recalled trying to bring the data sheet up after that several times, but counsel "had no interest in seeing it . . . ." The defendant said that he called counsel two weeks before the trial date, and counsel told him that the trial would be reset on the trial date. He said that defendant told him the same thing on the morning of the trial date, but when he arrived at the courthouse, counsel "said the case had to be disposed of today. . . . [I]t either had to be tried or plead guilty that day." The defendant testified that counsel told him the breathalyzer was "going to get you no matter what." He said that counsel told him he would get a longer sentence if he went to trial and counsel would try the case if the defendant wanted him to do so. He further testified that this was the first time counsel had mentioned a longer sentence if they tried the matter. The defendant said that counsel never discussed trial strategy, witnesses, the right to testify, the state's expert on the breath machine, or waiving his right to the preliminary hearing. The defendant testified that he pleaded guilty because he might have gotten a year if he went to trial, and counsel had "nothing to defend [him]."

On cross-examination, the defendant admitted to having pleaded guilty in a previous DUI case and knowing what was involved in a guilty plea. The defendant recalled that the judge asked him during the plea colloquy if he had previously gone over the waiver of trial by jury with his attorney, and he told the judge that counsel had gone over the document with him. He testified that was not true. The defendant said that counsel had not discussed the document with him but rather pointed out where to sign. Reading from the transcript of the guilty plea colloquy, the defendant recalled that he answered yes to the judge's questions about understanding that he could be prosecuted for perjury if he lied. The defendant testified that during the plea colloquy he had answered that he understood his rights, he did not have any questions, and he entered the plea freely and voluntarily. Furthermore, the defendant testified that he did not express any complaints with his representation at the time, nor later when counsel sought to delay the execution of the judgment.

The defendant testified that he had worked with Super Orange Strip for fifteen years and was familiar with its effects. He said that on the day of the accident, he used the Super Orange Strip in the morning and put the container in the cab of the truck because the temperature outside was cold. He was on his way to a job in Cordova when Mr. Leeke called him and decided to cancel the remaining appointments for the day due to the weather. The defendant testified that he did not remember anything else of that day until he was "sliding into the vehicles on the ice" and "in the

back of a squad car." He said that he knew he did not drink that day because "[he does not] drink when [he is] working." He further testified that he went over the police report with his counsel, but "[he did not] know how detailed [they] got into it." The defendant said that he and counsel did not cover the details of the case. He stated that he had pleaded guilty before to a DUI charge and a misdemeanor citation.

The defendant testified that counsel lied about preparing for the case and researching methylene chloride. He did not believe that counsel knew about the breath machine's error rate because counsel never mentioned it to him. He did not tell counsel about any possible witnesses in his defense but knew that there were witnesses. The defendant said that he never suggested to counsel that they wait and see if the state's witnesses showed up to court. He testified that counsel did not go over the different counts on his indictment, but he did understand that he could still be found guilty if the breath test was not admitted. The defendant said that he called counsel the day before every court appearance, but they never had an in-depth discussion about his case. He testified that he decided to plead guilty and said, "[w]hen [he] sat there that day, from what [he] understood, [he] was either going to trial or [he] had to plead guilty. If [he went] to trial, [counsel had] absolutely nothing." The defendant stated that counsel did not have the information about the Super Orange Strip and did not believe that counsel was ready to try the case. He testified that he realized he was not properly represented after entering his plea. When he returned to court with counsel to get a delay in the execution of the judgment, he was still learning how he might withdraw his plea. He decided to move to withdraw the plea about a week after that court appearance. The defendant testified that no one forced him to plead guilty and that he understood he was choosing the lesser of the possible sentences he could have expected should he have gone to trial.

The trial court denied the motion to withdraw the defendant's guilty plea. The court found that the plea was made freely and voluntarily. Additionally, the court found that the defendant did not prove that counsel's representation was ineffective or that he entered the plea as a result of fear. The defendant now appeals.

**Analysis**

The defendant contends that the trial court erred in denying his motion to withdraw his guilty plea. Specifically, the defendant argues that the motion should have been granted to correct manifest injustice because he was in fear at the time he entered the plea and his counsel provided ineffective assistance. The State responds that the trial court did not abuse its discretion in denying the motion.

Upon entrance of a guilty plea, it "cannot later be withdrawn as a matter of right." *State v. Mellon,* 118 S.W.3d 340, 345 (Tenn. 2003) (citing *State v. Turner,* 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995)); *State v. Crowe,* 168 S.W.3d 731, 740 (Tenn. 2005). Whether a defendant should be allowed to withdraw his guilty plea is within the sound discretion of the trial court. *Mellon,* 118 S.W.3d at 345-46 (citing *Henning v. State,* 184 Tenn. 508, 201 S.W.2d 669, 671 (1947)). On appeal, "[t]he trial court's decision 'will not be reversed unless it clearly appears that there was an abuse of discretion.'" *Crowe,* 168 S.W.3d at 740 (quoting *Henning,* 201 S.W.2d at

671). "An abuse of discretion exists if the record lacks substantial evidence to support the trial court's conclusion." *Id.* (citing *Goosby v. State,* 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995)).

The withdrawal of a plea of guilty is governed by Rule 32(f) of the Rules of Criminal Procedure. This rule provides:

> (1) Before Sentence Imposed. Before sentence is imposed, the court may grant a motion to withdraw a guilty plea for any fair and just reason.

> (2) After Sentence But Before Judgment Final. After sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice.

Tenn. R. Crim. P. 32(f). The defendant moved to withdraw his guilty plea in this case after sentencing, but before the judgment became final. In order to prevail on his motion, he must show that his guilty plea should be set aside to correct a "manifest injustice." Moreover, the defendant has the burden of establishing that he should be allowed to withdraw his guilty plea to prevent a manifest injustice. *State v. Turner,* 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995).

Rule 32(f) does not define "manifest injustice," however, courts have identified circumstances that meet the manifest injustice standard necessary for withdrawal of a plea. *See Turner,* 919 S.W.2d at 355; *State v. Evans,* 265 Ga. 332, 454 S.E.2d 468, 473 (1995). Withdrawal to correct manifest injustice is warranted where: (1) the plea was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

In its ruling, the trial court treated the defendant's arguments of fear and ineffective assistance of counsel as one and the same. In effect, the defendant argues that his fear of counsel's ineffectiveness caused him to plead guilty. Specifically, the defendant contends that his counsel was ineffective in investigating the matter, communicating with the defendant, and preparing for trial.

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the defendant bears the burden of proving (1) that counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings were fundamentally unfair. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). This standard has also been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). When a defendant claims ineffective assistance of counsel in relation to a guilty plea, the defendant must prove that counsel performed deficiently, and, but for counsel's errors, the defendant would not have pled guilty but would have, instead, insisted upon going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002).

On a direct appeal, the defendant has the burden of proving ineffective assistance of counsel by clear and convincing evidence. *State v. Amy Jo Blankenship*, No. M2002-01878-CCA-R3-CD, 2004 WL 508500, at *3 (Tenn. Crim. App., at Nashville, March 16, 2004) (*citing State v. Burns*, 6 S.W.3d 453, 461 n.5 (Tenn. 1999)), *perm. app. denied* (Tenn. Oct. 11, 2004). The claim of ineffective assistance of counsel is a mixed question of law and fact and is subject to *de novo* review; however, we review the trial court's findings of fact with a presumption of correctness unless the evidence preponderates otherwise. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Conclusions of law are reviewed under a *de novo* standard with no presumption of correctness. *Id.* We may neither re-weigh or re-evaluate the evidence nor substitute our own inferences for those drawn by the trial court. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997).

The trial court found that the defendant had effective representation during his guilty plea and that he was not in fear when he entered his plea. The court cited the transcript of the plea colloquy, showing that the defendant acknowledged that he made his plea freely and voluntarily and that he expressed no dissatisfaction with his attorney. The defendant claimed that counsel did not adequately investigate the matter by interviewing witnesses and looking into an involuntary intoxication defense. The trial court did not assign any merit to defendant's argument, noting that the defendant did not put on any witnesses that he asserted his counsel should have interviewed. The court also accredited counsel's testimony that he investigated the chemical that the defendant used in his work, discovered that the chemical could cause involuntary intoxication, and determined that an involuntary intoxication defense would not be a good defense strategy. The defendant asserted that counsel did not adequately communicate with him, but the trial court found that the communication was effective because the defendant met with counsel between fifteen and seventeen times, had counsel's cell phone number, and, according to counsel's testimony, discussed the facts and circumstances of the case with counsel. Finally, the trial court did not accredit defendant's argument that counsel was not prepared for trial. The court found that counsel received discovery from the state, researched the possibility of an involuntary intoxication defense, and was informed about the breath machine's error rate. The court also dismissed the defendant's argument that he entered the guilty plea because he was in fear due to counsel's ineffective trial preparation because the court found that counsel was, in fact, prepared for trial. The trial court denied the defendant's motion to withdraw his guilty plea because the defendant did not show that counsel provided ineffective assistance and as such, did not prove that his guilty plea should be withdrawn to correct manifest injustice. Nothing in the record preponderates against the trial court's findings; therefore, we affirm the trial court's denial of the defendant's motion.

**Conclusion**

Based on the foregoing, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE